IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WESTIN RIVERWALK,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-1490C<br>(Judge G. W. Miller) |

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7.1(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply in support of its motion for summary judgment.

As we demonstrated in our motion for summary judgment, the contract between the parties, contract number DAHA90-02-P-0063, is a firm fixed-price contract that cannot be modified except by written agreement of the parties. Def. Mot. at 4-7.[1] Furthermore, plaintiff, Westin Riverwalk ("Westin"), has not submitted evidence of any written modification to the contract, signed by both parties. Id. at 8-9. Finally, even if Westin had produced evidence of modifications made by Chief Master Sergeant Renee Chapman, such modifications would not bind the Government, because Chief Master Sergeant Chapman lacked actual authority to modify the contract. Id. at 8-12. Because Westin has failed to introduce evidence of any written modifications to the contract, and Westin's allegations that Chief Master Sergeant Chapman modified the contract are not sufficient to bind the Government, summary judgment should be granted in defendant's favor.

[1] "Def. Mot. __" refers to defendant's motion for summary judgment.

## I. The Parties Agreed Upon A Discovery Deadline Of June 1, 2005, And Defendant's Counsel Was Never Contacted With A Request To Depose Chief Master Sergeant Chapman

In plaintiff's response to the Government's motion for summary judgment, Westin alleges that it has made multiple attempts to contact Chief Master Sergeant Chapman "for further clarification of her role in this matter." Pl. Resp. at 5.[2] Westin contends that it has been denied access to Chief Master Sergeant Chapman and that it has been denied its rights to seek necessary discovery in this matter, or depose Chief Master Sergeant Chapman. Id. at 5, 6.

The parties agreed to a discovery deadline of June 1, 2005 in the joint preliminary status report filed with the Court on January 27, 2005. That deadline was approved by the Court in a scheduling order dated February 2, 2005. Prior to that deadline, and to this day, defendant's counsel has never been served with a request from plaintiff to depose Chief Master Sergeant Chapman. In fact, defendant's counsel has never even been contacted by plaintiff's counsel to inquire about Chief Master Sergeant Chapman's whereabouts[3] or to inquire about scheduling a deposition. Defendant noted in its initial disclosures, served on February 24, 2005, that Chief Master Sergeant Chapman was a current Government employee who may be contacted only through Government counsel.

During the discovery period, the only discovery request that defendant received from Westin was one set of interrogatories, received on May 9, 2005. Defendant responded to these

---

[2] "Pl. Resp. __" refers to plaintiff's response to defendant's motion for summary judgment.

[3] Defendant notes that Chief Master Sergeant Chapman retired from the National Guard Bureau ("NGB") on August 1, 2005, and was on terminal leave after May 20, 2005. After May 20, 2005, Chief Master Sergeant Chapman was not at the work address and phone number stated in defendant's initial disclosures.

interrogatories on June 3, 2005. Defendant filed its motion for summary judgment on June 30, 2005.

Defendant objects to Westin's untimely attempt to re-open discovery well after the deadline has passed. See Constr. Equip. Lease Co. v. United States, 26 Cl. Ct. 341, 349 (1992) (denying plaintiffs' request to conduct further discovery to enable them to uncover possible genuine issues of material fact on the issues addressed in defendant's motion for summary judgment because parties had ample time to complete discovery and defendant's motion for summary judgment was not filed until after discovery closed).

## II. Chief Master Sergeant Chapman's Apparent Authority Is Not Sufficient To Bind The Government

In its response to the Government's motion for summary judgment, Westin states that during the course of the Air National Guard ("ANG") conferences, Chief Master Sergeant Chapman informed representatives of Westin that she was authorized to order additional services on behalf of the Government. Pl. Resp. at 2. Plaintiff argues that Chief Master Sergeant Chapman had apparent authority to bind the Government, and that the Government gave Westin reasonable grounds for assuming that Chief Master Sergeant Chapman had authority to purchase additional goods upon the Government's behalf. Id. at 6.[4]

It is well-settled that the Government "'cannot be bound by the apparent authority of its

---

[4] Westin's reliance on Rudderer v. United States is misplaced. Pl. Resp. at 7. Rudderer dealt with a civilian Army employee's suit for wrongful dismissal. 188 Cl. Ct. 456, 412 F.2d 1285, 1286 (1969). The plaintiff challenged the validity of his removal notices because they were not signed by his immediate supervisor or by the civilian personnel officer. Id. at 1289. The court found that the notices had no procedural defect. Id. Rudderer did not address the issue of contracting authority or the roles of contracting officers and is inapposite to the facts of this case.

agents.'" Tracy v. United States, 55 Fed. Cl. 679, 682 (2003) (quoting Humlen v. United States, 49 Fed. Cl. 497, 503 (2001)). "Therefore, even if a government employee purports to have authority to bind the government, the government will not be bound unless the employee actually has that authority." Id. (citing Humlen, 49 Fed. Cl. at 503; Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)). Furthermore, "it is the plaintiff's responsibility, as the party asserting the existence of a contract with the United States, to prove that the person with whom he contracted had the requisite authority to contract on behalf of the United States." Id. (citing City of El Centro v. United States, 922 F.2d 816, 820-21 (Fed. Cir. 1990)). Anyone entering into a contract with the Government "'takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.'" Ruttenburg v. United States, 65 Fed. Cl. 43, 48 (2005) (quoting Fed. Crop Ins. Corp., 332 U.S. at 384). "This risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations of their authority." Gemini v. United States, 65 Fed. Cl. 55, 68 (2005) (quoting Trauma Serv. Group, Ltd. v. United States, 33 Fed. Cl. 426, 432 (1993), aff'd, 104 F.3d 1321 (Fed. Cir. 1997)).

Westin has not offered any evidence of Chief Master Sergeant Chapman's actual authority to bind the Government in contract. Westin has not provided any document from Chief Master Sergeant Chapman or the NGB that states that Chief Master Sergeant Chapman had the authority to enter into agreements upon behalf of the Government. In the appendix attached to the Government's motion for summary judgment, defendant has included two affidavits, one from Contracting Officer Mary Ann Enz, and one from Chief Master Sergeant Chapman; both affiants state that Chief Master Sergeant Chapman did not have contracting authority on the

Westin contract. DA 19-22.[5] Even assuming, for argument's sake, that Chief Master Sergeant Chapman did represent to Westin that she had the authority to enter into agreements upon behalf of the Government, this "apparent authority" was not sufficient to bind the Government in contract. Even if all of Westin's assertions are true, Westin has still failed to raise a genuine issue of material fact, essential to its prima facie claim of breach of contract.

As stated in the Government's motion for summary judgment, Chief Master Sergeant Chapman also lacked implied actual authority to bind the Government. Def. Mot. at 9-10. "Implied actual authority can bind the government, and it is 'generally implied when such authority is considered to be an integral part of the duties assigned to a government employee.'" Tracy, 55 Fed. Cl. at 683 (quoting H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989)). As we noted in our motion for summary judgment, contracting authority was not an integral part of Chief Master Sergeant Chapman's duties because (1) she could perform her task without contracting authority, and (2) other agency employees were granted such authority. Def. Mot. at 10 (citing 48 C.F.R. §§ 1.601-03); see also Nat'l Guard Fed. Acquisition Reg. Suppl. §§ 1.601-100, 1.602-1 (Sept. 2004), available at http://www.nationalguardcontracting.org/FAR.htm (noting that only contracting officers have the authority to enter into or modify contracts upon behalf of the Government in the NGB).

In Cruz-Pagan v. United States, this Court held that Drug Enforcement Administration ("DEA") agents could not have implied actual authority because the DEA's "internal regulations specifically preclude [them] from exercising such authority." 35 Fed. Cl. 59, 62-63 (1996).

---

[5] "DA __" refers to the appendix filed simultaneously with defendant's motion for summary judgment.

Likewise, because contracting officers are the only employees of the NGB that can enter into contracts upon behalf of the Government, Chief Master Sergeant Chapman is precluded from exercising such authority, and any modification or additional agreement that she made with Westin is not binding upon the Government.

III. The Court Of Federal Claims Does Not Possess Jurisdiction To Entertain Plaintiff's Claim For Equitable Relief

Although not set forth in the complaint, Westin appears to raise a claim for unjust enrichment in Westin's response to the Government's motion for summary judgment. In its response, Westin states that it is entitled to "equitable relief for the goods and services that it provided." Pl. Resp. at 7-8. Westin claims that under the quasi-contractual theory of quantum meruit, defendant "is equitably liable for the sums claimed due and owing by the Plaintiff in its Complaint." Id. at 8.

First, Westin is not permitted to raise new claims in its response to the Government's motion for summary judgment without amending its complaint. See Pacific Nat'l Cellular v. United States, 41 Fed. Cl. 20, 31 (1998) (plaintiff's attempt to raise new claims in response to defendant's motion to dismiss created "obvious confusion").

Second, Westin's argument for equitable relief is misplaced because this Court does not possess jurisdiction to decide that issue under the Tucker Act, 28 U.S.C. § 1491(a)(1). Westin relies upon this Court's decision in Nematoallahi v. United States, 38 Fed. Cl. 224 (1997), for the proposition that it may state a claim for unjust enrichment. Pl. Resp. at 8. However, in that case, this Court reasoned that:

> A claim for unjust enrichment essentially states a claim for breach of an implied-in-law contract. Trauma Serv. Group, Ltd. v. United

> States, 33 Fed. Cl. 426, 432 (1993), aff'd, 104 F.3d 1321 (Fed. Cir. 1997). However, the Tucker Act does not give this Court jurisdiction over actions for breach of an implied-in-law contract. Id.; Merritt v. United States, 267 U.S. 338, 340-41 . . . (1925). Moreover, there can be no implied-in-law contract and thus, no claim for unjust enrichment, when an express contract covering the same subject exists. Trauma, 33 Fed. Cl. at 432.

Nematoallahi, 38 Fed. Cl. at 235. The Court held that because the plaintiff's claim for unjust enrichment was essentially a claim for breach of an implied-in-law contract, the Court had no jurisdiction to grant equitable relief. Id. In Perri v. United States, this Court noted that "quantum meruit is an equitable remedy for unjust enrichment which employs the fiction of a contract implied-in-law." 53 Fed. Cl. 381, 408 (2002). The Court stated that it was well established that the Court of Federal Claims does not have jurisdiction over implied-in-law contracts. Id. (citing United States v. Mitchell, 463 U.S. 206, 281 (1983)) (additional citations omitted). Furthermore, "[n]o contract, express or implied in fact, arises upon the government's mere acceptance of benefits, absent affirmative authority of the contracting officer to so bind the government." Trauma Serv. Group, 33 Fed. Cl. at 431 (citations omitted).

Even assuming, for argument's sake, that Westin is correct in its assertion that the Government has been unjustly enriched in the instant case, this Court is not the appropriate forum for that claim. Moreover, there can be no implied-in-law contract because an express contract, namely contract number DAHA90-02-P-0063, already covers the same subject matter as Westin's claim for unjust enrichment. DA 1-7; Trauma Serv. Group, 33 Fed. Cl. at 432. There is no evidence, in that contract or elsewhere, that the contract only covers the "base price"

of the services Westin was to provide to the NGB. PPFUF at 13.[6] Despite Westin's assertions to the contrary, the contract is a firm fixed-price contract that states that the total award amount is $4,928.00. DA 1-2; Def. Mot. at 4-7. Also, there is no evidence that the contract was modified by an agent or employee of the Government with contracting authority. Def. Mot. at 8-12. Accordingly, there is no basis for Westin's argument for equitable relief.

IV. Westin Has Failed To Introduce Evidence Of Any Written Modification To The Contract Between The Parties; Nor Can There Be An Implied-In-Fact Contract Where An Express Contract Already Exists

Most notably, in Westin's response to the Government's motion for summary judgment, Westin has not produced any evidence of written modifications to the contract between the parties. Although Westin states that Chief Master Sergeant Chapman signed for additional orders for food, beverages "and/or services for the conference participants," Pl. Resp. at 2, Westin has not produced any evidence of additional orders signed by Chief Master Sergeant Chapman. Westin has not produced evidence of any additional written agreement between the parties outside of the original contract.

As stated in the Government's motion for summary judgment, the express terms of the contract between the parties require that any modifications to the contract be made only by written agreement of the parties. See DA 3; 48 C.F.R. § 52.212-4(c); Def. Mot. at 7-8. Westin has failed to produce in discovery or in response to defendant's motion for summary judgment any written agreement between the parties modifying the original contract. Accordingly, summary judgment should be granted in defendant's favor.

[6] "PPFUF__" refers to plaintiff's response to defendant's proposed findings of uncontroverted fact.

There is language in plaintiff's response to defendant's proposed findings of uncontroverted fact that suggests that Westin believes that an implied-in-fact contract exists in addition to the written contract between the parties. PPFUF at 13. In response to defendant's uncontroverted fact number four, Westin responds: "[p]laintiff admits that the purchase order entered into by the parties was in the base amount of $4,928.00, however the purchase order did not represent each and every service requested by Defendant in connection with subject conference." Id.

"In order to establish the existence of an express or implied-in-fact contract with the United States, a plaintiff must demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) 'the Government representative whose conduct is relied upon [had] actual authority to bind the government in contract.'" Ruttenberg, 65 Fed. Cl. at 48 (quoting City of El Centro, 922 F.2d at 820) (additional citations omitted). However, it is well-settled that "'[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract.'" L. P. Consulting Group, Inc. v. United States, 66 Fed. Cl. 238, 242 (2005) (quoting Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990), cert. denied, 498 U.S. 811 (1990)); see also Trauma Serv. Group, 104 F.3d at 1326 ("an implied-in-fact contract cannot exist if an express contract already covers the same subject matter"). This rule has been applied "to prevent parties from claiming the existence of an implied-in-fact contract to cover work that was not awarded consistent with the procedural provisions of an express contract." L. P. Consulting Group, 66 Fed. Cl. at 242 (citing Ruttenberg, 65 Fed. Cl. at 49-50 (noting that no implied-in-fact contract can exist where contract required written authorization)).

Any alleged additional agreements made between Westin and Chief Master Sergeant Chapman would cover the same subject as the written agreement between the parties– i.e., food and beverage service and audio visual equipment during the ANG conferences at the Westin from February 11 through February 15, 2002. Therefore, there can be no implied-in-fact contract between the parties because the express contract covered the same subject matter. Furthermore, as noted above, there can be no implied-in-fact contract because Chief Master Sergeant Chapman did not have actual authority to bind the Government in contract. Accordingly, any attempt by Westin to claim the existence of an implied-in-fact contract would be futile.

## CONCLUSION

For these reasons and the reasons set forth in our motion for summary judgment, defendant respectfully requests that the Court grant its motion for summary judgment and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker for
Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:

BURTON GRAY
Attorney
Litigation & Employment Law Section
Office of the Chief Counsel
National Guard Bureau
Arlington, VA 22202-3231

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 307-1011
Fax: (202) 307-0972

August 18, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2005, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad