# In the United States Court of Federal Claims

NOT FOR PUBLICATION
04-1490C
Filed October 19, 2005

| | |
|---|---|
| WESTIN RIVERWALK, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

Joel D. Seledee, Marsden, Motsaris & Seledee, PA, Baltimore, Maryland, for plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Mark A. Melnick, Assistant Director, Dawn S. Conrad, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., for defendant. Burton Gray, Attorney, Litigation and Employment Law Section, Office of the Chief Counsel, National Guard Bureau, Arlington, Virginia, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion for summary judgment pursuant to Rule 56(b) of the Rules of the Court of Federal Claims ("RCFC"). Oral argument was deemed unnecessary. For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

## BACKGROUND[1]

This dispute arises out of a contract between plaintiff Westin Riverwalk, a hotel located in San Antonio, Texas, and the National Guard Bureau ("National Guard") entered into on

[1] Unless otherwise indicated, the facts set forth in this section are either undisputed or alleged and assumed to be true for the purposes of the pending motion.

February 1, 2002.[2] Def.'s Proposed Findings of Uncontroverted Fact ¶ 2. The contract, identified as contract DAHA90-02-P-0063, provided that plaintiff would supply defendant with food and beverage supplies and services and audio visual supplies and services for two Air National Guard conferences to be held at the hotel between February 11 and February 15, 2002. *Id.* ¶¶ 2, 3, 7. Contracting Officer Mary Ann Enz (hereinafter "the Contracting Officer") signed the contract on behalf of the National Guard and was identified on the face of the contract as the Contracting Officer. *Id.* at ¶ 6; Def.'s Mot. For Summ. J., App. at 1.

The February 1, 2002 contract reflected an award amount of $4,928. *Id.*, App. at 1. The contract specified that this award amount was for one unit of the "Riverbend Meeting Package" (food and beverage supplies and services) at a cost of $3,648 and one unit of audio visual supplies and services at a cost of $1,280. *Id.,* App. at 2. Both items were identified as "FFP," indicating a firm fixed-price contract. *Id.* The contract also incorporated by reference Federal Acquisition Regulation ("FAR") 52.212-4, "Contract Terms and Conditions – Commercial Items (May 2001)." *Id.*, App. at 3.

Chief Master Sergeant Renee Chapman (hereinafter "Chapman") served as the Contracting Officer's representative during the conferences. Def.'s Proposed Findings of Uncontroverted Fact ¶ 10. Defendant submitted an affidavit from Chapman dated December 3, 2004, stating that she was not a contracting officer in February 2002 and had never been a contracting officer. Def.'s Mot. for Summ. J., App. at 21.

On February 19, 2002, the National Guard received an invoice from plaintiff requesting payment in the amount of $9,125.33. Def.'s Proposed Findings of Uncontroverted Fact ¶ 12. Chapman disputed this invoice with Westin's Credit Manager, Jane Troester, via electronic mail on March 21, 2002. *Id.* at ¶ 13. Chapman stated, "We did a formal contract with your hotel contract number DAHA90-02-P-0063 dated 1 Feb 02. In this contract the maximum we could spend was $3648.00 for the snacks and $1280.00 [for] the AV support." Def.'s Mot. for Summ. J., App. at 16.

On March 26, 2002, the National Guard received a second invoice from plaintiff requesting payment in the amount of $4,378.77. Def.'s Proposed Findings of Uncontroverted Fact ¶ 14. On April 23, 2002, the Air National Guard Financial Office made a payment of $4,378.77 to Westin. *Id.* at ¶ 15.[3]

---

[2] The February 1, 2002 contract attached to defendant's answer and the Contracting Officer's January 13, 2005 affidavit identify the contractor as "Silver Rio Partnership L.P. Westin." However, consistent with the parties' fillings, the Court will refer to plaintiff as "Westin Riverwalk" or "Westin."

[3] Defendant admits that under the February 1, 2002 contract, defendant still owes plaintiff $549.23 after the April 23, 2002 payment of $4,378.77. Def.'s Mot. for Summ. J. at 6 n.4. Defendant claims that it has not paid the remaining amount because plaintiff has not submitted an invoice for this sum. *Id.*

On September 18, 2003, Westin, through counsel, submitted a claim under the Contract Disputes Act of 1978, *as amended* 41 U.S.C. §§ 601-613 (2000), to the Contracting Officer in the amount of $4,746.56. *See* Compl., attachment 1. The claim stated:

> As you know, the Westin Riverwalk Hotel provided various services to the Air National Guard under the provisions of Contract No. DAHA 90-02-P-0063. The total balance owed to Westin as a result of services provided to the Air National Guard totaled $4,746.56. However, the Air National Guard has made no payments towards this amount, resulting in an outstanding balance owed of $4,746.56.

*Id.* The Contracting Officer did not respond to Westin's claim, resulting in a denial of the claim under 41 U.S.C. § 605(c). Def.'s Proposed Findings of Uncontroverted Fact ¶ 17.

On September 24, 2004, plaintiff filed this lawsuit, alleging that the Government's failure to reimburse plaintiff for all goods and services rendered constituted a breach of the February 1, 2002 contract. Compl. ¶ 5. Plaintiff sought damages in the amount of $4,746.56 for this alleged breach. Compl. ¶ 6.

In its response to defendant's motion for summary judgment, plaintiff appears to have modified its claim from a claim under the February 1, 2002 contract to a claim that the contract was subsequently modified. Specifically, plaintiff alleges that Chapman ordered services on behalf of the National Guard beyond those specified in the February 1, 2002 contract. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2.

## DISCUSSION

### I. The Standard for Summary Judgment

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Ralph Larsen & Son, Inc. v. United States,* 17 Cl. Ct. 39, 42 (1989). Disputes over facts which are not outcome-determinative under governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *Doe v. United States*, 48 Fed. Cl. 495, 499 (2000).

The movant bears the initial burden of establishing the absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323; *Ruttenburg v. United States*, 65 Fed. Cl. 43, 48 (2005). The non-movant then bears the burden of showing sufficient evidence of a material fact or facts in dispute that would allow a fact-finder to decide the case in its favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party must demonstrate an evidentiary conflict on the record; mere denials, conclusory statements or evidence that is merely colorable or not significantly probative will not defeat summary judgment. *Celotex Corp.*, 477 U.S. at 324; *Mingus Constructors*, 812 F.2d at 1390-91.

## II. The February 1, 2002 Contract Was a Firm Fixed-Price Contract

Plaintiff's complaint alleged that "[d]efendant United States' failure to reimburse the Plaintiff for all services rendered and/or goods provided represents a material breach of the contract between the parties." Compl. ¶ 5. Contract interpretation is an issue of law that is amenable to summary judgment. *Varilease Tech. Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998)).

The February 1, 2002 contract between the parties was a firm fixed-price contract, as indicated by the contract line items denoted "FFP." *See* Def.'s Mot. for Summ. J., App. at 2. Firm fixed-price contracts establish a price for the Government that is not subject to adjustment based upon the costs incurred by the contractor. *Information Sys. & Networks Corp. v. United States*, 64 Fed. Cl. 599, 600 n.1 (2005); *First Enter. v. United States*, 61 Fed. Cl. 109, 124 n.23 (2004) (citing 48 C.F.R. § 16.202-1 (2004)). A firm fixed-price contract places maximum risk and full responsibility for all costs and resulting profit or loss upon the contractor. 48 C.F.R. § 16.202-1 (2001). Therefore, even if plaintiff's costs in providing services to the National Guard exceeded $4,928, as a matter of law, plaintiff is not entitled to additional compensation under the February 1, 2002 contract.

Although the firm-fixed-price February 1, 2002 contract precludes any additional compensation for plaintiff pursuant to that contract, defendant's Motion for Summary Judgment frames the relevant issue as "whether defendant is entitled to summary judgment because the contract between the parties is a firm-fixed-price contract ***that was never subject to any written modification to increase the contract price***." Def.'s Mot. For Summ. J. at 1 (emphasis added). In response, plaintiff appears to contend that the contract was modified subsequent to February 1, 2002. In plaintiff's response to defendant's Motion for Summary Judgment, plaintiff alleges that although the February 1, 2002 contract between the parties was a firm-fixed price contract, the contract "did not represent each and every service requested by the Defendant in connection with the subject conference." Pl.'s Resp. to Def.'s Proposed Findings of Uncontroverted Fact at 13. Specifically, plaintiff claimed that:

> While at the conference, Ms. Chapman, on several occasions, informed representatives of Westin that she was authorized to order additional services on behalf of Defendant United States . . . . In accordance therewith, Ms. Chapman, as authorized agent of Defendant United States, ordered several types of food, beverages and/or services for the conference participants . . . . Ms. Chapman signed for each such order, and again stated that she was authorized to do so on Defendant United States' behalf.

Pl.'s Resp. To Def.'s Mot. for Summ. J. at 2. Therefore, the Court must determine whether the record contains evidence that the February 1, 2002 contract was modified.

## III. Plaintiff Has Failed To Present Evidence That the February 1, 2002 Contract Was Modified

As noted earlier, the February 1, 2002 contract incorporated by reference the May 2001 version of FAR 52.212-4, 48 C.F.R. § 52.212-4 (2001). Pl.'s Resp. To Def.'s Proposed Findings of Uncontroverted Fact at 13. FAR 52.212-4(c) provided that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties." 48 C.F.R. § 52.212-4(c) (2001).[4]

Plaintiff claims that "while on site during the subject convention, Renee Chapman made oral and/or written request[s] for additional items not originally covered by the contract between the parties." Pl.'s Resp. To Def.'s Mot. For Summ. J. at 6. Plaintiff also alleges that "Ms. Chapman signed for each such order, and again stated that she was authorized to do so on Defendant United States' behalf." *Id.* at 2. Under FAR 52.212-4(c), the February 1, 2002 contract could not be modified orally, and therefore, any oral requests by Chapman could not have affected the terms of the contract.

However, the record does contain several unsigned banquet checks and event order forms relating to the February 11 and February 15, 2002 conferences. It appears that plaintiff alleges that these unsigned checks and event order forms constituted modifications to the contract between the parties. *See* Def.'s Mot. for Summ. J., App. at 27.

As noted above, FAR 52.212-4(c) provided that modifications could be made "only by written agreement of the parties." 48 C.F.R. § 52.212-4(c). The requirement of a "written agreement of the parties" made clear that an unsigned written receipt or banquet order would not suffice; rather, the contract required bilateral contract modifications signed by both the contractor and the contracting officer. *See* FAR 43.103(a), 48 C.F.R. § 43.103(a) (2001).

Relying on *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865 (Fed Cir. 1987) and *SCM Corp. v. United States*, 219 Ct. Cl. 459, 595 F.2d 595 (1979), defendant contends that any modification to the contract was required to be in a writing signed by both parties to be valid. Def.'s Mot. For Summ. J. at 7-8. *SCM Corp.* and *Mil-Spec Contractors* do not address contract modifications governed by FAR 52.212-4(c), but the reasoning in those cases is applicable to the present case. In *Mil-Spec Contractors*, the Court of Appeals for the Federal Circuit held that an oral settlement agreement was invalid because the parties had not executed a standard written form as required by 48 U.S.C. § 301 (1986). 835 F.2d at 869. In *SCM Corp.*, the Court of Claims held that an oral settlement agreement relating to a price adjustment was invalid because the

---

[4] The text of FAR 52.212-4(c) (May 2001) is the same as the current version, which was effective October 2003. *See* 48 C.F.R. § 52.212-4(c)(2004).

agreement was not made in writing on a specific form, as required by 32 C.F.R. § 16-103 (1975). 219 Ct. Cl. at 462-63; 595 F.2d at 597-98. *Mil-Spec Contractors* and *SCM Corp.* demonstrate that where a governing statute or regulation requires contract modifications to be made in a specific manner, no other form of modification will suffice.

The banquet checks and event order forms in the record are not signed by Chapman, nor do they appear to have been signed by any representative or employee of Westin. Def.'s Mot. for Summ. J., App. at 29-40. Therefore, those banquet checks and event order forms do not constitute the written agreement of the parties required by FAR 52.212-4(c). Accordingly, plaintiff has failed to adduce any evidence that the February 1, 2002 contract was modified.

**IV. Plaintiff Has Failed to Present Evidence That Chapman Had Authority to Modify the February 1, 2002 Contract**

Even if plaintiff had presented evidence of modifications signed by Chapman and a representative of plaintiff, the Court would still grant defendant's motion for summary judgment because plaintiff has failed to present any evidence that Chapman had authority to modify the contract. The Government cannot be bound by the unauthorized acts of its agents. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). Thus, where a contract is based on the "alleged representations of unauthorized officials," the Government is not bound by it. *Arakaki v. United States*, 62 Fed. Cl. 244, 262 (2004) (quoting *Howard v. United States*, 31 Fed. Cl. 297, 314 (1994)). The plaintiff bears the burden of proof with respect to a government agent's authority to enter into a contract on behalf of the Government. *Doe,* 48 Fed. Cl. at 501.

Authority to bind the Government in contract may be either express or implied. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989). Government employees have express authority to contractually bind the Government when such authority is unambiguously granted by an applicable statute or regulation. *Advanced Team Concepts, Inc. v. United States*, ___ Fed. Cl. ___, ___, 2005 WL 2402862 at *3 (Sept. 28, 2005); *Doe*, 48 Fed. Cl. at 501. Plaintiff has failed to identify any statute or regulation granting Chapman express authority to modify the February 1, 2002 contract. To the contrary, FAR 43.102, 48 C.F.R. § 43.102, provided that:

> (a) Only contracting officers acting within the scope of their authority are empowered to execute contract modifications on behalf of the Government. Other Government personnel shall not –
> (1) Execute contract modifications;
> (2) Act in such a manner as to cause the contractor to believe that they have authority to bind the Government; or
> (3) Direct or encourage the contractor to perform work that should be the subject of a contract modification.

FAR 43.102, 48 C.F.R. § 43.102 (2001). *See also* FAR 1.601, 48 C.F.R. § 1.601 (2001) ("Contracts may be entered into and signed on behalf of the Government only by contracting

officers."); *see also* J. CIBINIC & R. NASH, FORMATION OF GOVERNMENT CONTRACTS 80 (3d ed. 1998) ("Contracting officers have the sole authority to legally bind the Government to contracts and contract modifications.").

In Chapman's affidavit of December 13, 2004, she stated that she was not and never had been a contracting officer. Def.'s Mot. For Summ. J., App. at 21. Furthermore, in the Contracting Officer's affidavit of January 13, 2005, she stated that she had sole contracting authority on the February 1, 2002 contract and that she did not delegate that authority to Chapman.[5] *Id.*, App. at 19. Finally, the job description for Chapman's position of "Accounting Superintendent/Functional Manager" did not include acting as a contracting officer as one of the position's responsibilities. *Id.*, App. at 24-25.

In addition to express authority, the Government can be bound by an agent possessing implied authority. *H. Landau & Co.*, 886 F.2d at 324; *JGB Enters. v. United States*, 63 Fed. Cl. 319, 332 (2004). Authority to bind the Government is implied when such authority is considered to be an "integral part of the duties assigned to a Government employee." *H. Landau & Co.*, 886 F.2d at 324; *see also* CIBINIC & NASH, *supra*, at 96. Contracting authority is considered integral to a government employee's duties when the government employee could not perform his or her assigned tasks without such authority and agency regulations do not grant such authority to other agency employees. *Leonardo v. United States*, 63 Fed. Cl. 552, 557 (2005); *Flexfab, LLC v. United States*, 62 Fed. Cl. 139, 148 (2004), *aff'd*, ___ F.3d ___, 2005 WL 2347854 (Fed. Cir. Sept. 27, 2005); *Cruz-Pagan v. United States*, 35 Fed. Cl. 59, 62 (1996) ("[T]he doctrine of implied actual authority cannot be used to create an agent's actual authority to bind the government in contract when the agency's internal procedures specifically preclude the agent from exercising such authority."). The National Guard was governed by the Federal Acquisition Regulation, including FAR 43.102, 48 C.F.R. § 43.102. *See* Nat'l Guard Fed. Acquisition Reg. Suppl. ("NGFARS") Subpart 1.3 "Agency Acquisition Regulations" and § 1.304 (2002).[6]

---

[5] FAR 2.101, 48 C.F.R. §2.101 (2001) stated that the term "contracting officer" included "certain authorized representatives of the contracting officer acting within the limitations of their authority as delegated by the contracting officer." The Contracting Officer's affidavit stated that she did not delegate authority to modify the contract to Chapman, and plaintiff has presented no evidence to the contrary. Therefore, the record contains no evidence that Chapman possessed actual authority to modify the contract by reason of her designation as the Contracting Officer's representative.

[6] The FAR applied to all acquisitions by contract with appropriated funds of supplies or services by and for the use of the Federal Government. FAR 1.104, 48 C.F.R. § 1.104 (2001); FAR 2.101, 48 C.F.R. § 2.101 (2001). FAR 43.102, 48 C.F.R. § 43.102 applied to contract modifications for all types of contracts, with the exception of orders for supplies and services not otherwise changing the terms of a contract or agreement and modifications for extraordinary contractual relief. FAR 43.000, 48 C.F.R. § 43.000 (2001). The alleged modifications at issue in this case did not fall within either exception, and therefore, FAR 43.102, 48 C.F.R. § 43.102 was

Therefore, any claim that Chapman possessed implied authority would necessarily fail because FAR 43.102, 48 C.F.R. § 43.102 specifically delegates such authority to another agency official – namely, the Contracting Officer. There can be no implied actual authority where, as here, express provisions limit the ability of an individual to enter into a particular type of contract or arrangement. *Cornejo-Ortega v. United States*, 61 Fed. Cl. 371, 374 (2004); *Tracy v. United States*, 55 Fed. Cl. 679, 683-84 (2003); see also *Northrop Grumman Corp. v. United States,* 47 Fed. Cl. 20, 63 (2000) ("Implied actual authority may not inhere in a government employee when regulations preclude that employee from exercising contracting authority."). In addition, it seems clear from the job description for Chapman's position that contracting authority was not an integral part of the duties assigned to her. Nor was it the case that she could not perform her assigned tasks without such authority. Def.'s Mot. for Summ. J., App. at 24-25. Accordingly, there is no genuine issue of material fact as to whether Chapman possessed implied authority to modify the contract.

Plaintiff argues that even if Chapman were not a contracting officer with actual or implied authority to bind the Government, plaintiff should be permitted to recover because Chapman had apparent authority to modify the contract. Pl.'s Resp. To Def.'s Mot. For Summ. J. at 4, 6-7. In support of this argument, plaintiff relies on Chapman's position as the Government's sole on-site authorized representative and her alleged assertions of authority to order additional services. *Id.* at 2, 6. However, this argument fails because the doctrine of apparent authority, which can operate to bind private parties by the acts of their agents, does not apply to the actions of government officials. *City of El Centro v. United States*, 922 F.2d 816, 820-21 (Fed. Cir. 1990), *cert. denied*, 501 U.S. 1230 (1991) ("anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority") (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. at 384); *H. Landau & Co.,* 886 F.2d at 324 ("apparent authority will not suffice to hold the government bound by the acts of its agents"); *Advanced Team Concepts*, ___ Fed. Cl. at ___, 2005 WL 2402862 at * 3 ("[A] person contracting with the federal government bears the burden of ascertaining that the agent is acting within the scope of her authority and duty."); *District of Columbia vs. United States*, 67 Fed. Cl. 292, 338-39 (2005).

Plaintiff relies on *Strann v. United States*, 2 Cl. Ct. 782, 789 (1983), for the proposition that "a principal whose actions have given a third party reasonable grounds for assuming that the principal's agent has certain authority is estopped from pleading the agent's lack of authority." *See* Pl.'s Resp. To Def.'s Mot. For Summ. J. at 6. However, *Strann* is inapposite here because it did not address the issue of apparent authority to bind the Government. 2 Cl. Ct. 782. Plaintiff also cites *Ruderer v. United States*, 188 Ct. Cl. 456, 412 F.2d 1285 (1969), for the proposition that "when an official of a contracting agency is not a contracting officer, but has been sent by contracting officers for the express purpose of giving guidance in connection with a contract, the contractor is justified in relying on the representations of the purported agent." *See* Pl.'s Resp. To Def.'s Mot. For Summ. J. at 7. However, *Ruderer* is similarly inapplicable because it does not

---

applicable.

address the issue of authority to bind the Government in contract.[7]

Apparent authority is inapplicable in this case even if, as plaintiff claims, Chapman, "on several occasions, informed representatives of Westin that she was authorized to order additional services on behalf of Defendant United States." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2. Even if a government employee purports to have authority to bind the Government, the Government will not be bound unless the employee actually has such authority.[8] *Tracy*, 55 Fed. Cl. at 682. As noted earlier, one entering into a contract with the Government "takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Ruttenburg*, 65 Fed. Cl. at 48 (quoting *Fed. Crop Ins. Corp.*, 332 U.S. at 384); *JGB Enters., Inc.,* 63 Fed. Cl. at 332. "This risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations of their authority." *Gemini Elec., Inc. v. United States*, 65 Fed. Cl. 55, 67-68 (2005) (quoting *Trauma Serv. Group, Ltd. v. United States*, 33 Fed. Cl. 426, 432 (1995)).

## V. Plaintiff Has Failed to Demonstrate That It is Entitled to Additional Discovery Under RCFC 56(f)

Plaintiff alleges that it is entitled to additional discovery under RCFC 56(f) because it "has been denied access to Ms. Chapman, and has been denied its right to fully seek necessary discovery in this matter." Pl.'s Resp. To Def.'s Mot. For Summ. J. at 5. Plaintiff contends that this purported denial has prevented plaintiff from determining "what authority, if any, [Chapman] contends she was given by [her] superiors/principals at the United States." *Id.*

The Court may defer ruling on a summary judgment motion if the party opposing that motion sets forth, by affidavit, "explicit reasons why discovery is required." *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003) (quoting *C.W. Over & Sons v. United States*, 44 Fed. Cl. 18, 23 (1999)). RCFC 56(f) states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present

---

[7] The sole issue in *Ruderer* even remotely connected to the concept of apparent authority is the question whether plaintiff's grievances constituted a petition for purposes of the First Amendment if they were given to an official that plaintiff believed had power to redress his complaints. 188 Ct. Cl. at 465-66, 412 F.2d at 1291.

[8] Agreements made by government agents without authority to bind the Government may be subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts. *Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1433 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1177 (1999). Plaintiff does not allege that Chapman's acts were subsequently ratified, nor does the record contain any evidence that a government agent with authority ratified the alleged modifications.

> by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

At the outset, the Court notes that plaintiff has failed to comply with a procedural requirement of RCFC 56(f) because it has not filed an affidavit in support of its request for additional discovery. However, setting that procedural deficiency aside, on the merits, plaintiff has presented no basis for the Court to grant further discovery.

"[P]arties cannot evade summary judgment simply by arguing that additional discovery is needed; rather, they must meet the requirements of Rule 56(f)." *Theisen Vending Co., Inc. v. United States*, 58 Fed. Cl. 194, 197 (2003) (quoting *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n.5 (5th Cir. 2002)). A party seeking additional discovery under RCFC 56(f) must (1) specify the particular factual discovery being sought, (2) explain how the results of the discovery are reasonably expected to engender a genuine issue of material fact, (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue, (4) recite the efforts previously made to obtain those facts, and (5) show good grounds for the failure to have discovered the essential facts sooner. *Id.* at 198.

Plaintiff has sufficiently specified the discovery sought – namely, the deposition of Chapman. However, plaintiff has failed to satisfy any of the remaining criteria to obtain additional discovery under RCFC 56(f). First, plaintiff has failed to demonstrate that additional discovery relating to Chapman's authority to modify the contract would raise a genuine issue of material fact. A fact is material only if it will make a difference in the result of a case under the governing law. *Perri v. United States*, 53 Fed. Cl. 381, 393 (2002), *aff'd*, 340 F.3d 1337 (Fed. Cir. 2003). As previously discussed, additional information on Chapman's authority to modify the contract would be immaterial, because plaintiff has failed to demonstrate that the February 1, 2002 contract was modified by a "written agreement of the parties." *See* Section I., *supra*.

Next, plaintiff's previous efforts to obtain Chapman's deposition and the asserted grounds for plaintiff's failure to obtain the deposition sooner are both severely lacking. On February 2, 2005, the Court issued a Scheduling Order adopting the discovery schedule proposed by the parties in their January 27, 2005 Joint Preliminary Status Report to the Court. The Scheduling Order provided that fact discovery closed on June 1, 2005, giving the plaintiff several months to take Chapman's deposition. The first time that plaintiff alerted the Court to any difficulty in scheduling Chapman's deposition and complying with the Scheduling Order was in its response to Defendant's Motion for Summary Judgment, filed on August 1, 2005, two months after fact discovery had closed. As noted earlier, in that filing, plaintiff asserted that it had been "denied its right to fully seek necessary discovery in this matter." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5. In fact, however, plaintiff not only failed to comply with the Scheduling Order, but also neglected to request an extension of the discovery deadline in a timely manner. *See Constr. Equip. Lease Co. v. United States*, 26 Cl. Ct. 341, 349 (1992) (refusing to grant plaintiff additional discovery where plaintiff failed to comply with a discovery schedule ordered by the

court).

Chapman retired from the National Guard on August 1, 2005, and was on terminal leave after May 20, 2005. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. For Summ. J. at 2 n.3. Plaintiff's counsel claims that when he attempted to contact Chapman, he was informed that she no longer worked for the Air National Guard. Pl.'s Resp. To Def.'s Mot. For Summ. J. at 5. This indicates that plaintiff's counsel waited until at least May 20, 2005, just 11 days before fact discovery closed, to attempt to schedule Chapman's deposition. Defendant's counsel was never served with a request to depose Chapman or contacted by plaintiff to inquire about assisting in locating Chapman or scheduling such a deposition. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. For Summ. J. at 2. Plaintiff has provided no justification for its delay in attempting to schedule Chapman's deposition or for its failure to take additional reasonable steps to locate Chapman. It appears from the record that Chapman's deposition was not taken in a timely manner due to a lack of diligence on the part of plaintiff's counsel.

In summary, plaintiff has failed to show how a deposition of Chapman could raise a genuine issue of material fact in light of the provision of the contract that required any modification to be made "by written agreement of the parties." In addition, plaintiff's efforts to obtain Chapman's deposition fall well short of the level required to show adequate grounds for plaintiff's failure to take Chapman's deposition sooner. Accordingly, plaintiff has failed to meet the requirements of RCFC 56(f), and its request for additional discovery is denied.

## VI. The Court of Federal Claims Lacks Jurisdiction Over Plaintiff's Claim Based Upon *Quantum Meruit*

Plaintiff alternately claims that even if the February 1, 2002 contract was not modified, Westin should recover for the additional goods and services it provided on a *quantum meruit* basis. Pl.'s Resp. to Def.'s Mot. For Summ. J. at 7-8. Plaintiff belatedly raised this claim for the first time in Plaintiff's Response to Defendant's Motion for Summary Judgment, which, as noted earlier, was filed on August 1, 2005. Plaintiff should have sought leave to amend its complaint if it wished to add additional grounds for relief. However, because defendant had an opportunity to respond to plaintiff's *quantum meruit* claim in its Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, filed August 18, 2005, the Court will address that claim.

At common law, the "common count" of *quantum meruit* permitted so-called "quasi-contractual" recovery for the value of services rendered. *Fluor Enters. v. United States*, 64 Fed. Cl. 461, 495 n.31 (2005).[9] Its modern incarnation has been said to proceed on the theory

[9] Although plaintiff only asserted a claim for recovery in *quantum meruit*, it appears that plaintiff is attempting to recover for both goods and services provided. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7-8 ("Plaintiff Westin is entitled to equitable relief for the goods and services that it provided."). Therefore, one might argue that, as a technical matter, plaintiff

"that if one party to a transaction provides goods or services to the other party that the parties intended would be paid for, but the recipient refuses to pay for them, the law will imply a contract for the recipient to pay the fair value of what it has received." *Perri v. United States*, 340 F.3d 1337, 1343 (Fed. Cir. 2003). Recovery in *quantum meruit*, however, is based upon on a contract implied-in-law, and the Court of Federal Claims lacks jurisdiction over such claims under the Tucker Act, 28 U.S.C. § 1491(a)(1)(2000).[10] *Hercules v. United States*, 516 U.S. 417, 423-24 (1996); *Trauma Service Group,* 104 F.3d at 1324; *D.V. Gonzalez Elec. & Gen. Contrs., Inc. v. United States*, 55 Fed. Cl. 447, 459-60 (2003); *Nematollahi v. United States*, 38 Fed. Cl 224, 236 (1997).[11]

An exception arises in situations where a plaintiff provides goods or services to the Government pursuant to an express contract and the Government refuses to pay for them because of defects in the contract that rendered it invalid or unenforceable. *Perri*, 340 F.3d at 1343-44; *Dureiko v. United States*, 62 Fed. Cl. 340, 358-59 (2004). "Since in that circumstance it would be unfair to permit the government to retain the benefits of the bargain it had made with the plaintiff

---

should have brought a claim in *quantum valebant* seeking recovery for the value of goods provided, as well as a claim in *quantum meruit* for the value of services rendered. *See United States v. Amdahl Corp*., 786 F.2d 387, 393 n.6 (Fed. Cir. 1986); *Fluor Enters.*, 64 Fed. Cl. at 495 n.31. That courts and litigants continue to draw such distinctions is evidence that the common law forms of action do indeed "rule us from their graves." F. MAITLAND, EQUITY, also THE FORMS OF ACTION AT COMMON LAW 296 (1909).

[10] The Contract Disputes Act of 1978 applies to "any express or implied contract" by an executive agency for the procurement of, *inter alia*, property and services. 41 U.S.C. § 602(a) (2000). Interpreting that provision, agency boards of contract appeals have held that they do not have jurisdiction over contracts implied-in-law. *B&B Reproductions*, GPO BCA 09-89, 1995 WL 488447 (June 30, 1995); *Embarcadero Center, Ltd.*, GSBCA No. 8526, 89-1 BCA (CCH) ¶ 21,362 at 107,681 (Oct. 31, 1988). Similarly, the Court of Federal Claims does not have jurisdiction over contracts implied-in-law under 28 U.S.C. § 1491(a)(2), which grants the Court of Federal Claims "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [41 U.S.C. § 609(a)(1)(2000)] . . . on which a decision of the contracting officer has been issued under section 6 of that Act [41 U.S.C. § 605 (2000)]."

[11] A contract implied-in-law is one in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. *Algonac Mfg. Co. v. United States*, 192 Ct. Cl. 649, 673-74, 428 F.2d 1241, 1255-56 (1970), *Mega Construction Co., Inc. v. United States*, 29 Fed. Cl. 396, 470 (1993). In comparison, an implied-in-fact contract is "founded upon a meeting of minds which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Maher v. United States*, 314 F.3d 600, 606 (Fed. Cir. 2002) (quoting *Hercules, Inc.*, 516 U.S. at 424).

without paying for them, the courts [have] utilized quantum meruit as a basis for awarding the plaintiff the fair value of what it supplied to the government." *Perri*, 340 F.3d at 1344; *Guardsman Elevator Co. v. United States*, 50 Fed. Cl. 577, 584 (2001). In *United States v. Amdahl Corp.*, the Court of Appeals for the Federal Circuit explained:

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated under the contract, but rather under an implied-in-fact contract.

786 F.2d at 393.

The present case is not within the exception described above. The bargain the Government made with plaintiff required a written modification to authorize payment in excess of the firm fixed price established in the February 1, 2002 contract. As noted earlier, plaintiff has failed to produce any evidence of a written modification to the February 1, 2002 contract between the parties – either by the Contracting Officer or any other government employee. In addition, as previously discussed, Chapman lacked the authority to enter into a contract modification on behalf of the Government. "A government representative with the requisite authority is a required element of both express and implied-in-fact federal contracts." *Gemini Elecs., Inc.*, 65 Fed. Cl. at 68 (quoting *Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1153 (Fed. Cir. 1983)); *see also Advanced Team Concepts*, ___ Fed. Cl. at ___, 2005 WL 2402862 at *2.

Furthermore, there can be no implied contract, and thus, no claim in *quantum meruit*, where a valid express contract covering the same subject matter exists. *Nematollahi*, 38 Fed. Cl. at 235; *Trauma Serv. Group*, 33 Fed. Cl. at 432. The existence of the February 1, 2002 firm-fixed price contract governing the provision of goods and services to defendant in connection with the National Guard conferences precludes the existence of an implied contract dealing with the same subject unless the implied contract is "entirely unrelated" to the express contract. *See Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990), *cert. denied*, 498 U.S. 811 (1990); *L.P. Consulting Group, Inc. v. United States*, 66 Fed. Cl. 238, 242 (2005). This rule has been applied to prevent parties from claiming the existence of an implied-in-fact contract to cover work that was not awarded in a manner consistent with the procedural provisions of an express contract dealing with the same work. *L.P. Consulting Group*, 66 Fed. Cl. at 242. An alleged contract modification for the provision of additional food and beverage and audio visual supplies and services cannot reasonably be perceived as "entirely unrelated" to the original contract for the provision of the same type of supplies and services for the same conferences. Furthermore, plaintiff cannot recover under an implied contract as a means of circumventing the February 1, 2002 contract's express requirement that any contract modification "may be made only by written agreement of the parties." Accordingly, there is no basis for plaintiff's *quantum meruit* claim.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment for defendant pursuant to RCFC 56(c).

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge